## Margaret Henderson et al., Plffs. in Err., v. Samuel Maclay et al.

---

### Same v. Samuel O. Himes et al.

As no duty rests upon a wife to support her husband, a resulting trust in her favor springs from her husband's purchase of land in his name with her money.

Possession by the husband as tenant by the curtesy after her death, and continuous possession by her heirs from the death of the husband, will save the trust from the operation of the act of April 22, 1856, which requires the enforcement of a resulting trust within five years from right of entry accrued.

An exception in a deed is invalid unless the land described in the exception would, unless excepted, have passed under the description of the land conveyed.

A deed of land described as "being composed of the land inherited by the said Jane E. under the will of her father, Samuel Maclay, deceased (excepting about 30 acres, more or less, sold to the Rev. John S. Easton), and also a small piece off the mountain surveys purchased from William Brown," passes both the land inherited and the land purchased, except the 30 acres sold out of the land inherited.

(Decided October 4, 1886.)

Error to the Common Pleas of Mifflin County to review judgments for the defendants in actions of ejectment. Affirmed.

BUCHER, P. J., trying the cases without a jury, in accordance with the act of April 22, 1874, found the following facts:

In 1832 Joseph Henderson purchased by deed duly recorded,

---

NOTE.—See note to Ackley v. Ackley, 1 Sad. Rep. 138.

from William Brown, a tract of land in Mifflin county known as the John Brown survey. This was junior to an interfering survey known as the Samuel Maclay survey, which belonged to Henderson's wife, Jane E. Henderson.

On April 1, 1846, for the expressed consideration of $1,910, Joseph Henderson and his wife conveyed to John S. Easton 38 acres and 32 perches of her said land. Part of the consideration was in fact a conveyance of 4 acres and 109 perches on the same day, by John S. Easton to Joseph Henderson.

On December 7, 1847, Joseph Henderson and his wife executed a deed to a trustee for certain uses expressed at length in the deed itself. The lands conveyed by the deed were thus described: "All that certain messuage, plantation, and tract of land situate in Union and Brown townships, Mifflin county, Pennsylvania, adjoining lands of Robert Alexander's heirs, Hugh Alexander, Rev. John S. Easton, Wm. Barr, and the mountain surveys, containing 800 acres, more or less, being the whole of the tract of land on which the said parties of the first part now reside, being composed of the land inherited by the said Jane E. under the will of her father, Samuel Maclay, deceased (excepting about 30 acres, more or less, sold to the Rev. John S. Easton), and also a small piece off the mountain surveys purchased from William Brown."

Jane E. Henderson died a few days after the execution of the trust deed, and Joseph Henderson continued to use and receive the rents, issues and profits of these lands up to the time of his death, which occurred on December 25, 1863. Then Robert P. Maclay, brother of Jane E. Henderson, having a life estate, went into possession, and used and occupied the lands until his death in August, 1884.

The tract of 4 acres and 109 perches conveyed by Easton to Joseph Henderson was not included in the deed of trust, and the legal title remained in Joseph Henderson until his death, when Robert P. Maclay took possession of this tract also, and occupied the same until his death, claiming title either as one of the *cestuis que trust* in the deed of December 7, 1847, or as one of the heirs at law of Jane E. Henderson, or as the life tenant under the said deed of trust.

At his death the plaintiffs, heirs of Joseph Henderson, brought these suits. The first suit was against the heirs of Jane E. Henderson, for the tract of 4 acres and 109 perches. The second suit was against the trustee and *cestuis que trust* under the trust deed, and the plaintiffs sought to recover the land embraced in the John Brown survey.

Finding for the defendants in the first suit, the court said, *inter alia:*

"It is true that no resulting trust springs from a conveyance by husband to wife, or to a child or grandchild, or to one to whom the purchaser stands *in loco parentis,* because the moral obligation to provide for such a party is at once recognized, and an advancement is presumed; yet brothers and sisters are not within the rule (Benbow v. Townsend, 1 Myl. & K. 506; Maddison v. Andrew, 1 Ves. Sr. 58; Edwards v. Edwards, 39 Pa. 377; Earnest's Appeal, 41 Phila. Leg. Int. 471); so, we think that, as no duty rests upon the wife to maintain the husband, by our act of assembly of June 13, 1836 (Purdon's Digest, 1157), there is no presumption of a gift when the wife's money pays for land conveyed to the husband, and that the legal presumption of a trust for her use arises—just as if they were strangers to each other. This being so, Mrs. Jane E. Henderson owned the 4 acres and 109 perches of land, because she paid for it. Joseph Henderson was entitled to occupy the said tract, after the death of his wife in 1847, as tenant by the curtesy, until he died in 1863; and as Robert P. Maclay took possession upon the death of Henderson in 1863, and held title until his death in 1884, § 6 of the act of April 22, 1856, requiring resulting trusts to be enforced within five years from right of entry accrued, does not affect the right of the owners of the trust (her heirs) from recovering, because Maclay's possession from 1863 to 1884 was either as one of the heirs of his sister, Jane E. Henderson (and this he held for his brothers and nephews and nieces), or as *cestui que use* under the trust deed of December 7, 1847; and in either case the possession, under Clark v. Trindle, 52 Pa. 492; Seichrist's Appeal, 66 Pa. 237; Leach v. Ansbacher, 55 Pa. 85; McNinch v. Trego, 73 Pa. 52; Webster v. Webster, 53 Pa. 161, saved the trust under the statute. Robert P. Maclay,

being in possession, could not sue himself to enforce the trust. It results, from the facts found, that Mrs. Jane E. Henderson was the owner of the land mentioned in the præcipe, and that the heirs of her husband, Joseph Henderson, are not entitled to recover the same from them."

Finding for the defendants in the second suit, the court said, *inter alia:*

"It is useless to ascertain the quantity of land embraced by the John Brown survey that lies outside of this interference, for reasons that will be presently assigned. The plaintiffs predicate their claim to recover upon the ground that the John Brown tract in dispute is excepted from the trust deed of December 7, 1847. If this be true, they can recover so much of the John Brown tract as does not interfere with the William Maclay tract. If it be not true, they cannot recover any portion of the land, because it passed by the trust deed aforesaid. It is a cardinal canon of construction that a deed shall be construed most strongly against the grantor. Now, in the grant before us there is no exception out of any lands mentioned, whatever, and this is necessary to create an exception. Shep. Touch, p. 78.

"The exception is merely to the identification of the land conveyed; the grantors, in order to individuate the lands conveyed, say they are the lands that Jane E. Henderson got from her father, less the 30 acres previously conveyed to Rev. John S. Easton. That is all, and this expression is in parenthesis. Then, one other part, to wit, the tract purchased from William Brown, did not come from her father; so that the reading of the deed is this: 'All the lands I got from my father except the 30 acres conveyed to Easton is conveyed, and the William Brown tract is also conveyed, and that I did not get from my father.' Why was the William Brown tract mentioned at all unless because it was conveyed by the deed? Jane E. Henderson, the wife, did not own it at all, so there was no occasion to say that all the lands received from her father were conveyed except the 30 acres previously sold to Easton and the William Brown purchase. The deed declares a manifest purpose to convey more than one tract of land, as the language of the instrument plainly declares. The wife owned but one tract; that descended to her

from her father.    The husband owned the Brown tract.    In the description of the lands conveyed the language of the deed is: Being composed of the lands inherited by the said Jane E. Maclay under the will of her father, Samuel Maclay, deceased (excepting about 30 acres sold to the Rev. John Easton), and also a small piece off the mountain surveys purchased from John Brown.'    The words 'being composed' clearly indicate that more than one tract was intended to be conveyed.    If only one tract —that of the wife—was to be conveyed, it was useless to specify more than it.    Evidently the Brown purchase is embraced by the deed of trust, and thus the title is vested in the trustee, one of the defendants, and the plaintiffs cannot recover."

The court overruled the plaintiffs' exceptions and entered judgments for the defendants.    Thereupon the plaintiffs took these writs, assigning as error the findings of fact and conclusions of law.

*J. A. McKee* and *T. M. Uttley* for plaintiffs in error.

*D. W. Woods & Son* and *A. Reed* for defendants in error.

Per Curiam:

These two cases were argued together.    The main facts are common to both.    The cases were tried before the judge, without a jury, under the act of April 22, 1874.

We are clearly of opinion that the learned judge gave a correct construction to the trust deed.    Any other would be doing violence to the plain import of its language.

Mrs. Jane E. Henderson paid for the 4 acres and 109 perches of land, and owned it.    The possession of her husband after her death was as tenant by the curtesy only.    The possession afterwards taken and held by Maclay saved the trust under the statute.

Judgment in each case affirmed.